James Scott BRADY, Timothy John McCarthy, and Thomas K. Delahanty, Plaintiffs-Appellants,

v.

John J. HOPPER, Jr., M.D., Defendant-Appellee.

No. 83–2401.

United States Court of Appeals, Tenth Circuit.

Dec. 27, 1984.

Rehearing Denied March 1, 1985.

**330**

Paul D. Kamenar of the Washington Legal Foundation, Washington, D.C. (Daniel J. Popeo of the Washington Legal Foundation, Washington, D.C., Jacob A. Stein, Stein, Mitchell & Mezines, Robert Cadeaux, Washington, D.C., and Charles F. Brega and Robert E. Kendig, Roath & Brega, P.C., Denver, Colo., with him on the briefs), for plaintiffs-appellants.

Michael T. McConnell, Denver, Colo. (Joseph C. Jaudon and Robert M. Baldwin, Denver, Colo., with him on the brief), Long & Jaudon, Denver, Colo., for defendant-appellee.

Before HOLLOWAY, Chief Judge, and BARRETT and DOYLE, Circuit Judges.

BARRETT, Circuit Judge.

The sole question presented on this appeal is whether the federal district court was clearly erroneous in granting the defendant-appellee's, John J. Hopper, Jr., M.D. (Dr. Hopper), motion to dismiss the complaint and cause of action filed by plaintiffs-appellants, James Scott Brady, Timothy John McCarthy and Thomas K. Delahanty (hereinafter for convenience referred to as appellants) for failure to state a claim which would entitle them to relief. The appellants were shot and seriously injured by John W. Hinckley, Jr., during his attempt to assassinate President Reagan in Washington, D.C. on March 30, 1981. For a period from late October, 1980, until March, 1981, Dr. Hopper, a psychiatrist residing and practicing in Colorado, had treated Hinckley on an out-patient basis.

The district court found/ruled that even assuming that all of the facts and many of the conclusions set forth in appellants' complaint were taken as true, still they would not be sufficient to create a legal duty on the part of Dr. Hopper to protect these appellants from the specific harm done them by Hinckley.

The district court concluded, and we agree, that there are no controlling Colorado decisions on the specific issue involving the duty owed by Dr. Hopper under the circumstances alleged. In a detailed Memorandum Opinion and Order, the district court concluded, as a matter of Colorado law, that there was no duty owed by Dr. Hopper to the appellants absent allegations that, in the forseeability context, Hinckley had conveyed to Dr. Hopper specific threats against specific (namely, the appellants here) victims. *See, Brady v. Hopper*, 570 F.Supp. 1333, 1339 (D.Colo.1983). The court analyzed and discussed Colorado law, Colorado decisions, general applicable tort law and principles and decisions from other jurisdictions. The court concluded that the Colorado Supreme Court, if acting in the same case and capacity of the federal district court sitting in this diversity suit, would adopt the rationale announced by the California Supreme Court in the cases of *Tarasoff v. Regents of University of California*, 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976) and *Thompson v. County of Alameda*, 27 Cal.3d 741, 167 Cal.Rptr. 70, 614 P.2d 728 (1980).

In *Tarasoff*, the Court held that "[w]hen a (psychotherapist, psychiatrist, psychologist or therapist, as used interchangeably) determines, or pursuant to the standards of his profession should determine, that his patient presents a serious danger of violence to another, he incurs an obligation to use reasonable care to protect the intended victim against such danger." 551 P.2d at

340. In *Thompson*, the Court refused to extend the *Tarasoff* obligation imposed upon a third person in a setting where there was no identifiable victim. The Court instead concluded that there was no duty on the part of a third person where the patient had made generalized threats to kill but no specific threats to specifically identifiable victims. 614 P.2d at 735.

In the instant case, the court concluded/found that "[i]n my opinion, the 'specific threats to specific victims' rule states a workable, reasonable, and fair boundary upon the sphere of a therapist's liability to third persons for the acts of their patients." 570 F.Supp. at 1339. The court concluded that absent allegations in a complaint that a psychiatrist is aware of his patient's specific threats to specific victims, there exists no legal duty or obligation on the part of the psychiatrist for harm done by the patient. The court found that "... [t]he legal obstacle to the maintenance of this suit is that there is no relationship between Dr. Hopper and *plaintiffs* which creates any legal obligation from Dr. Hopper to these plaintiffs." 570 F.Supp. at 1339. This was predicated upon the court's analysis of the Appellants' Complaint, with which we agree, as follows:

Accepting as true the facts alleged in the complaint and viewing them in a light most favorable to plaintiffs, it is my conclusion that plaintiffs' injuries were not foreseeable; therefore, the plaintiffs fall outside of the scope of defendant's duty. Nowhere in the complaint are there allegations that Hinckley made any threats regarding President Reagan, or indeed that he ever threatened anyone. At most, the complaint states that if Dr. Hopper had interviewed Hinckley more carefully, he would have discovered that Hinckley was obsessed with Jody Foster and the movie "Taxi Driver", that he collected books on Ronald Reagan and political assassination, and that he practiced with guns. According to plaintiffs, if Dr. Hopper had properly performed his professional duties, he would have learned that Hinckley suffered from delusions and severe mental illness, as opposed to being merely maladjusted. Even assuming all of these facts and many of plaintiffs' conclusions to be true, the allegations are still insufficient to create a legal duty on the part of Dr. Hopper to protect these plaintiffs from the specific harm.

570 F.Supp. at 1339.

Following oral arguments in this appeal, this Court, pursuant to Colo.App.R. 21.1, certified to the Supreme Court of Colorado the following questions which this Court determined "may be determinative of the above-captioned (diversity) cause now pending before this Court, and to which it appears there is no controlling precedent in the decisions of the Supreme Court of Colorado" as follows:

(1) In determining the extent of liability of a psychiatrist to a third person resulting from serious injuries inflicted by the psychiatrist's out-patient on such third person, does the duty owed by the psychiatrist to protect such third persons exist only when the psychiatrist has knowledge of specific threats to specific, identifiable victims made by the out-patient?

(2) If the response to question (1) is negative, does the controlling rule of law in Colorado give rise to a duty on the part of a psychiatrist to take reasonable action to protect third persons from physical harm resulting from acts of his out-patient which, under all of the facts and circumstances, were reasonably foreseeable?

(3) Does the Plaintiffs' Complaint state a claim for relief under Colorado law sufficient to withstand a Motion to Dismiss for failure to state a claim upon which relief can be granted?

The entire record on appeal, all briefs, and docketing statement were forwarded to the Supreme Court of Colorado. The Supreme Court of Colorado, by En Banc Order dated October 18, 1984, stated that "Upon consideration of the Order Certifying Questions of Law from the U.S. Court of Appeals, Tenth Circuit herein, and now being suffi-

ciently advised in the premises, It is This Day Ordered that this court declines to answer the questions certified."

■ In a diversity of citizenship case the federal district court sits as a state trial court and applies the law of the forum state. *See Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Hackbart v. Cincinnati Bengals, Inc.,* 601 F.2d 516 (10th Cir.1979), *cert. denied,* 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 188 (1979). This court has held that in diversity cases "we ordinarily accept the view of the resident district judge on the unsettled law of his state unless clearly wrong." *Vallejos v. C.E. Glass Co.,* 583 F.2d 507, 512 (10th Cir.1978), quoting from *Parsons v. Amerada Hess Corp.,* 422 F.2d 610, 614 (10th Cir.1970). "While the issue is not clear of doubt, the views of a federal district judge [in a diversity case] who is a resident of the state where the controversy arose interpretive of that state's laws, carry extraordinary force on appeal where there are no state decisions directly on point or none which provide a clear precedent." *United States v. Hunt,* 513 F.2d 129, 136 (10th Cir.1975); *National Bank of Casper,* 505 F.2d 1064 (10th Cir. 1974); *Hardy Salt Company v. Southern Pacific Transportation Company,* 501 F.2d 1156 (10th Cir.1974), *cert. denied,* 419 U.S. 1033, 95 S.Ct. 515, 42 L.Ed.2d 308 (1974).

■ We cannot hold that the conclusions of the federal district court, interpreting the applicable law of Colorado under the circumstances of this case, are clearly erroneous.

WE AFFIRM.