DAVID M. NOVAK, Indiv. and as Adm'r of the Estate of Beverly Ann Novak, Deceased, Plaintiff-Appellant, v. A. RATHNAM *et al.*, Defendants-Appellees (Robert Lee Endicott, Defendant).

Third District    No. 3—86—0237

Opinion filed March 20, 1987.

Leslie J. Rosen, of Leonard M. Ring & Associates, of Chicago (Leonard M. Ring, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert E. Wagner, Assistant Attorney General, of counsel), for appellees.

JUSTICE STOUDER delivered the opinion of the court:

In this wrongful-death action, plaintiff, David M. Novak, appeals from the judgment of the circuit court of Peoria County in favor of the defendants, Dr. A. Rathnam and David Girmscheid. Novak, individually and as special administrator of the estate of Beverly Ann Novak, filed a four-count complaint alleging that the defendants' negligent or wilful and wanton misconduct was the proximate cause of the decedent's death. The trial court originally dismissed counts I, III, and IV of the complaint which named Rathnam and Girmscheid and left standing count II against Robert Lee Endicott, the defendant who shot and killed the decedent.

Because this case was decided on the sufficiency of the complaint, the following facts are those alleged in the complaint. On July 8,

1976, Endicott was admitted as an in-patient to the Zeller Mental Health Center (Zeller) in Peoria. On July 21, he was found to be a person subject to involuntary admission pursuant to the Mental Health and Developmental Disabilities Code (the Code) (Ill. Rev. Stat. 1985, ch. 91½, par. 1—101 *et seq*). Endicott was treated with antipsychotic medication during the period of his hospitalization and was prescribed additional medication upon his release. Girmscheid was responsible for Endicott's care and treatment during this time. Endicott was discharged on August 13, 1976, and was diagnosed as suffering from acute schizophrenic episodes.

Endicott was again involuntarily admitted to Zeller on February 2, 1978. He was placed under the care of Rathnam and Girmscheid, who had learned that Endicott had refused to maintain the antipsychotic medications prescribed upon his release in 1976. They also learned that Endicott had become hostile and threatening after his release. During this second term of hospitalization, Endicott refused to participate in group therapy and formal activities and had refused to take the medications prescribed.

Rathnam and Girmscheid allegedly diagnosed Endicott as a paranoid schizophrenic but failed to treat him for that condition. The complaint alleged that despite their knowledge of Endicott's behavior and violent tendencies, Rathnam and Girmscheid recommended his release. The complaint further alleged in count IV, based on a claim of wilful and wanton misconduct, that neither defendant reported his observations to their superiors and that they falsely reported that Endicott had been treated.

Endicott was released on March 24, 1978, and allegedly failed to maintain his prescribed medication. On May 4, 1979, while in Fort Lauderdale, Florida, and during the course of an attempted armed robbery, Endicott shot and severely injured Beverly Ann Novak, who later died of those injuries.

On appeal, Novak contends that Rathnam and Girmscheid had a duty to treat and confine Endicott, knowing that he possessed violent tendencies and that he posed a great danger to the public. He further contends that Rathnam and Girmscheid are not immune from suit as State employees by virtue of their employment with Zeller.

■■ ■ In reviewing the sufficiency of a complaint in the context of a motion to dismiss, all well-pleaded facts and all reasonable inferences therefrom must be regarded as true. (*Wheeler v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 502, 485 N.E.2d 372.) A cause of action should not be dismissed unless it is clear that no set of facts could be proved which would entitle plaintiff to recover. *Willard v. Northwest*

*National Bank* (1985), 137 Ill. App. 3d 255, 484 N.E.2d 823.

We must first consider whether Novak has alleged facts giving rise to a duty on the part of Rathnam and Girmscheid toward the decedent. The gist of this action is not based on professional malpractice, which would involve a duty extending to the psychotherapist's patient. Rather, this case deals with the negligence of the professional in releasing a patient in violation of a duty owed to the public at large. There are no Illinois cases directly confronting the question of a professional's liability for the negligent release of his patient. It must be remembered, however, that the decision to release an involuntarily admitted patient does not usually rest with a single individual, although the decision rests substantially on the opinion of the professional staff.

■ There is a great deal of reliance by both parties on the case of *Tarasoff v. Regents of the University of California* (1976), 17 Cal. 3d 425, 551 P.2d 334, and the cases either defining or expanding on its application. We note that *Tarasoff* dealt with the duty to warn a readily identifiable victim that the therapist's patient had threatened her. The patient eventually made good on his threat and the therapist was held liable for the failure to warn the victim. As has been done in the cases that have followed and limited *Tarasoff* (although we believe that Illinois would adopt Tarasoff's affirmative duty on therapists to warn foreseeable third parties), we do not believe that the duty would extend to victims who are not readily identifiable. See, *e.g., Thompson v. County of Alameda* (1980), 27 Cal. 3d 741, 614 P.2d 728.

There have been courts, Illinois included, that have modified or expanded on the holding in *Tarasoff* in the area of psychotherapist or hospital liability. (See generally Annot., 38 A.L.R.3d 699 (1971).) In *Johnson v. Village of Libertyville* (1986), 146 Ill. App. 3d 834, 496 N.E.2d 1219, the court held that hospitals have a duty to control patients who the hospital knows should be involuntarily committed. However, *Johnson* seems to be based more on a negligent-escape theory, since the emphasis in the case is more on control than commitment. The complaint, in that case, stated only that the patient was in the hospital "shortly before the occurrence" and, as the dissenting opinion pointed out, the complaint was insufficient to allow the inference that the hospital "knew or should have known of [the patient's] mental disorders, drug addiction, and propensity toward violence." 146 Ill. App. 3d 834, 496 N.E.2d 1219, 1225.

Two other cases recognized a duty on the part of the psychotherapist or hospital which, if breached, would impose liability for the negligent release or the failure to commit an individual who the psycho-

therapist either knows or should have known would pose a threat to the general public. In *Currie v. United States* (M.D.N.C. 1986), 644 F. Supp. 1074, the court recognized a cause of action for failure to commit a patient who had made threats of violence. The distinguishing factor in this case centered on the fact that the nature of the breach would be substantially different than that used in an ordinary negligence case. The court adopted a "psychotherapist judgment rule" which would examine the "good faith, independence, and thoroughness" of the psychotherapist's decision not to commit. This rule operates in much the same way that courts utilize the judicially created "business judgment rule" in deferring to the decision of disinterested directors of a business absent bad faith or self-interest. While recognizing the duty existed, the court dismissed the complaint, pointing to the facts of the case and noting that the psychotherapist's good faith was beyond dispute.

In *Pangburn v. Saad* (1985), 73 N.C. App. 336, 326 S.E.2d 365, the court found that the plaintiff had stated a valid cause of action for wrongful release of a mental patient where, less than 16 hours after his release, plaintiff's brother stabbed the plaintiff some 20 times and inflicted the disfiguring and life-threatening wounds. The court also determined that State-employed psychiatrists were only entitled to a qualified immunity and that the allegations of the complaint sufficiently demonstrated the psychiatrist's grossly negligent acts. The case was then remanded for trial.

The determination that a similar duty exists in this case would be essential in holding that Novak's complaint would withstand Rathnam and Girmscheid's motion to dismiss. And, once a duty is established, we must then examine the complaint to determine if it is sufficient to establish the breach of that duty.

■ ■ However, even if the complaint sufficiently alleges a duty owed and the breach of that duty, our analysis is not complete. We must next consider whether, based on the facts pleaded in the first amended complaint and the reasonable inferences therefrom, the trier of fact could conclude that Rathnam and Girmscheid's negligence in permitting Endicott's release was the proximate cause of the decedent's death. In order to recover for negligence or wilful and wanton misconduct, the plaintiff must show that his injury was proximately caused by the defendant's breach of the duty of care. (See *Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 440 N.E.2d 96; *Breck v. Cortez* (1986), 141 Ill. App. 3d 351, 490 N.E.2d 88.) Whether an act or omission is the proximate cause of an injury is generally a question for the trier of fact unless the answer is so clear that reasonable minds would

agree on it unanimously. *Reed v. Danville Concrete Products Co.* (1981), 102 Ill. App. 3d 205, 429 N.E.2d 605.

■ In this case, we find no causal connection between the release of Endicott and the death of the decedent one year and two months later. At most, Rathnam and Girmscheid's conduct merely furnished a condition which made Endicott's travel to Florida possible. It was Endicott's conduct during the course of an attempted armed robbery which was the efficient and proximate cause of the decedent's death. The events were just too far removed in time to establish the requisite causal connection.

In view of our determination to affirm the decision of the trial court, it is unnecessary to discuss the final issue raised on appeal, which is whether the psychotherapist-defendants were immune from liability under a theory of sovereign immunity.

For the foregoing reasons, the judgment of the circuit court of Peoria County dismissing counts I, III, and IV of plaintiff's complaint for failure to state a cause of action is affirmed.

Affirmed.

SCOTT, P.J., and WOMBACHER, J., concur.