DOROTHY ECKHARDT, Adm'r of the Estate of Harold V. Eckhardt, Plaintiff-Appellant, v. THOMAS KIRTS, Defendant-Appellee.

Second District   No. 2—88—0319

Opinion filed February 22, 1989.

REINHARD, J., specially concurring.

Peter Thomas Smith, of Sycamore, for appellant.

John W. Duncker and William F. Cunningham, both of O'Reilly, Cunningham, Norton & Mancini, of Wheaton, for appellee.

JUSTICE McLAREN delivered the opinion of the court:
On March 29, 1984, plaintiff, Dorothy Eckhardt, administrator of

the estate of Harold V. Eckhardt, decedent, filed a malpractice action against Thomas Kirts, M.D., defendant, alleging that his negligent psychiatric treatment of Joyce Eckhardt was a cause of the wrongful death of the decedent. Joyce Eckhardt, the decedent's wife, who suffered from mental disabilities, shot her husband with his police service revolver on March 29, 1982. The amended complaint, filed July 1, 1987, contained three counts. Count I sought pecuniary losses under the Wrongful Death Act (Ill. Rev. Stat. 1985, ch. 70, pars. 1, 2); count II sought compensation for funeral expenses; and count III sought compensation for bodily injury, pain, and suffering under the Survival Act (Ill. Rev. Stat. 1985, ch. 110½, par. 27—6). On December 23, 1987, the defendant filed a motion for summary judgment, arguing that plaintiff could not demonstrate that defendant owed a duty to the plaintiff and that plaintiff's expert deposition testimony could not establish that defendant's alleged negligent treatment of Joyce Eckhardt proximately caused the death of the decedent.

On March 10, 1988, the trial court struck the affidavits of plaintiff's expert witness, Dr. Sanford Finkel, and granted defendant's motion for summary judgment. Plaintiff appeals. We affirm.

On appeal, plaintiff argues that the trial court erred in striking the affidavits of Dr. Sanford Finkel, asserting that rather than being conclusory, the affidavits presented an adequate factual basis for the medical opinions offered therein, and the trial court erred in granting summary judgment because there were material factual issues regarding Dr. Kirts' duty of care toward plaintiff's decedent, because the decedent husband was a readily identifiable and foreseeable member of a group of three potential victims subject to Joyce Eckhardt's violent proclivities. Additionally, plaintiff argues that defendant's alleged negligent treatment and failure to warn were the proximate cause of decedent's death because they increased the probability that the homicide was more likely to occur than not.

On March 29, 1982, in the early morning hours, Harold V. Eckhardt, decedent, a De Kalb County sheriff's deputy, was sleeping in the bedroom of his mobile home in Kirkland, Illinois. His wife, Joyce Eckhardt, who suffered from cyclical mental health disabilities, took Harold Eckhardt's police service revolver and shot him to death.

The mother of Harold V. Eckhardt and plaintiff herein, Dorothy Eckhardt, was appointed administrator of the estate of Harold Eckhardt. On March 29, 1984, plaintiff, as administrator, filed suit against the defendant, Dr. Kirts, a psychiatric physician from De Kalb, Illinois, who had been treating Joyce Eckhardt prior to the death of her husband, Harold Eckhardt. Joyce Eckhardt had been un-

dergoing psychiatric treatment as an outpatient at the De Kalb Clinic from December 1976 until February 2, 1982, approximately seven weeks prior to the homicide. She had also been hospitalized twice in October 1981, for a recurrent, major depressive disorder.

During pretrial discovery, an amended complaint was filed on January 1, 1987. The amended complaint alleged that Dr. Kirts was negligent in his treatment of Joyce Eckhardt and negligent with regard to the safety of Harold V. Eckhardt in the following ways: (1) he failed to test Joyce Eckhardt properly to determine the nature of Joyce Eckhardt's mental health disabilities; (2) he failed to diagnose accurately the nature of Joyce Eckhardt's mental health disabilities; (3) he failed to refer Joyce Eckhardt to a specialist for treatment of her mental health disabilities; (4) he failed to provide Joyce Eckhardt with appropriate medication to control or otherwise treat the mental health disabilities from which she suffered; and (5) he failed to warn Joyce Eckhardt or Harold Eckhardt of the danger to them from Joyce Eckhardt's mental health disabilities.

On December 23, 1987, the defendant filed a motion for summary judgment, arguing that the deposition testimony of the plaintiff's expert witness demonstrated that the plaintiff could not, as a matter of law, establish a duty owed by Dr. Kirts to Harold Eckhardt. The defendant further argued that the expert's deposition testimony failed to establish that the alleged negligence of the defendant proximately caused the death of Harold Eckhardt.

Plaintiff submitted her memorandum and the affidavit of her expert witness, Sanford I. Finkel, M.D., in opposition to the motion for summary judgment. Defendant filed a reply and moved to strike the affidavit of Dr. Finkel because it contradicted his earlier deposition. Plaintiff moved for leave to amend the affidavit of Dr. Finkel; the motion was granted, and the amended affidavit was filed on February 28, 1988.

In his amended affidavit, Dr. Finkel stated that he was a psychiatric physician licensed to practice in the State of Illinois and resided in Chicago, Illinois; that he received his medical degree from the University of Michigan in 1967 and received certification from the American Board of Psychiatry and Neurology in 1976; and that he had been in the private practice of psychiatry since 1971. Dr. Finkel also indicated that his practice of psychiatry had included work in Cook County, Kane County, and McHenry County, Illinois, and the standard of care in De Kalb County is substantially the same as the standard of care in the other localities. In his amended affidavit, Dr. Finkel further stated that he had fully examined the medical records and medical history of

Joyce Eckhardt, the records concerning her diagnosis and treatment by Dr. Kirts, the deposition of Dr. Kirts and the history and conduct of Joyce Eckhardt prior to, during, and after the death of Harold Eckhardt. Plaintiff did not attach those documents to the affidavit, presumably because of their bulk.

With regard to his deposition, Dr. Finkel stated in his affidavit that he was asked questions which he understood dealt with the narrow issue of whether Harold Eckhardt would be "alive today" and the exact probability, in percentages, that Harold Eckhardt "would be alive today" if the proper standard of care had been followed in Joyce Eckhardt's psychiatric treatment. In his earlier deposition, Dr. Finkel indicated that Dr. Kirts could have managed Joyce Eckhardt's depression more effectively by conforming to the standard of care; that adhering to the proper treatment could well have lessened the chances of an ultimate tragedy occurring, but he was unable to give an exact percentage or probability that Harold Eckhardt would be alive today. The deposition indicates that Joyce made no specific threats on the life of her husband. Other deposition questions were directed specifically to the narrow issue of predicting the specific homicide of Harold Eckhardt. In answering those questions, Dr. Finkel indicated that Kirts "would have some idea, assuming now that he can verify there were threats to life, that the possibility of her having a similar episode with similar symptoms which would include that [homicide] was, indeed, a distinct possibility." Dr. Finkel admitted that the homicide of Harold Eckhardt, as opposed to that of the sister or mother of Joyce Eckhardt, could not be specifically predicted. When asked whether Dr. Kirts should have predicted that Joyce would shoot someone, Dr. Finkel replied that it was "an issue that I believe should have been explored in greater depth," but he could not answer the question as posed.

In his amended affidavit, Dr. Finkel further stated that the questioning in the deposition was so narrow in scope and so restrictive that it did not allow him to state his opinion on the causal relationship between Dr. Kirts' psychiatric care of Joyce Eckhardt and the death of Harold Eckhardt. Dr. Finkel then went on to state his opinion in the following terms:

"10. It is my opinion to a reasonable medical certainty based on the information referred to in paragraph 3. above that in 1982 Joyce Eckhardt was suffering from depression with a paranoid psychotic episode and that the nature of the mood disorder was cyclical, reoccurring [*sic*] on an intermittent basis.

11. It is my opinion to a reasonable medical certainty based

on the information referred to in paragraph 3. above that Dr. Kirts deviated from the standard of medical care for De Kalb County, Illinois in 1981 and 1982 by, without being limited to, misdiagnosing Mrs. Eckhardt's psychiatric disorder, failing to test Mrs. Eckhardt fully and investigate her family and social history to determine the cause of her disorder, treating Mrs. Eckhardt's symptoms only and not acting to determine and treat the cause of the disorder, failing to educate the family members as to the nature of the disorder and failing to warn them of the dangerous nature of the disorder.

12. It is also my opinion to a reasonable medical certainty based on the information referred to in paragraph 3. above that Joyce Eckhardt was violent with homicidal ideation and that the objects of her violence were her mother, her sister, and her husband, Harold V. Eckhardt, deceased. This opinion is based, in part, on the fact that Mrs. Eckhardt made threats of violence against her mother and sister and had barricaded her husband Harold V. Eckhardt, deceased out of their trailer home in October, 1981 because she was afraid he was going to harm her and her children. It is not determinative that Mrs. Eckhardt did not threaten her husband's life or physical well being.

13. It is my opinion to a reasonable medical certainty based on the information referred to in paragraph 3. above that Dr. Kirts's [sic] deviations from the standard of psychiatric care made Joyce Eckhardt's psychotic break down in March, 1982 more probable to occur than not and increased the likelihood of such a break down.

14. It is my opinion to a reasonable medical certainty based on the information referred to in paragraph 3. above that Joyce Eckhardt's violent and homicidal acts during a subsequent psychotic break down such as in March, 1982 were reasonably foreseeable by Dr. Kirts.

15. It is my opinion to a reasonable medical certainty based on the information referred to in paragraph 3. above that Dr. Kirts.s [sic] deviation from the standard of psychiatric care made Joyce Eckhardt's violent and homicidal acts more probable to occur than not and increased the likelihood of those acts in March, 1982.

16. It is my opinion to a reasonable medical certainty based on the information referred to in paragraph 3. above that it was reasonably foreseeable by Dr. Kirts that Joyce Eckhardt's violent and homicidal acts would be directed toward her

mother, sister or husband, Harold V. Eckhardt, deceased.

17. It is my opinion to a reasonable medical certainty based on the information referred to in paragraph 3. above that Joyce Eckhardt killed her husband, Harold V. Eckhardt, while in a paranoid psychotic episode and would not have done so if not in that mental state."

We note that paragraph 3 merely refers to the records of Joyce Eckhardt, but does not provide facts supporting Dr. Finkel's conclusions.

The facts surrounding the homicide are also set forth in *People v. Eckhardt* (1987), 156 Ill. App. 3d 1077, 509 N.E.2d 1361, although this court is not taking judicial notice thereof.

We begin our analysis by examining the scope of the therapist's duty to the plaintiff's decedent, if any. Plaintiff argues that defendant, Dr. Kirts, owed a duty to the decedent because he was a member of a readily identifiable group of three potential victims against whom Joyce Eckhardt would reasonably and foreseeably direct her violent acts. Plaintiff correctly points out that no Illinois case has directly addressed the question of a psychotherapist's duty to identifiable potential victims and urges this court to follow the analysis of *Tarasoff v. Regents of the University of California* (1976), 17 Cal. 3d 425, 551 P.2d 334, 131 Cal. Rptr. 14, which is cited by the Appellate Court for the Third District in *Novak v. Rathnam* (1987), 153 Ill. App. 3d 408, 411, 505 N.E.2d 773, 775. There, the court stated in *dicta*:

"We note that *Tarasoff* dealt with the duty to warn a readily identifiable victim that the therapist's patient had threatened her. The patient eventually made good on his threat and the therapist was held liable for the failure to warn the victim. As has been done in the cases that have followed and limited *Tarasoff* (although we believe that Illinois would adopt Tarasoff's affirmative duty on therapists to warn foreseeable third parties), we do not believe that the duty would extend to victims who are not readily identifiable. See, *e.g., Thompson v. County of Alameda* (1980), 27 Cal. 3d 741, 614 P.2d 728." 153 Ill. App. 3d at 411, 505 N.E.2d at 775.

In *Novak*, the administrator of the estate of a woman killed by a former mental patient sued two psychotherapists for negligence in treating and releasing a patient with known violent tendencies. The patient ultimately killed the plaintiff's decedent more than a year later during an attempted armed robbery. While the court in *Novak* stated its belief that the therapists' duty would extend only to readily identifiable victims, the decision actually turned primarily on the failure to establish the proximate cause of the decedent's death based on

the alleged negligence of the psychotherapists because the death of the victim occurred more than a year later. The court found that the defendants merely provided a condition for the later acts of the patient but that there was no causal relationship established.

■ In the present case, while plaintiff admits that the specific homicide of the husband could not be predicted, plaintiff nevertheless asserts that the decedent husband, along with the patient's mother and sister, was within a class of foreseeable, potential victims. Plaintiff further asserts that this is a factual question for the trier of fact to decide. We disagree. Plaintiff appears to confuse the factor of foreseeability associated with a legal duty with the foreseeability of harm frequently associated with legal causation. Duty and causation are entirely separate elements of the tort of negligence. See generally *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 367 N.E.2d 1250. See also *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 308 N.E.2d 617.

■ ■ A complaint for negligence must set out the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately resulting from the breach. (*Cunis*, 56 Ill. 2d at 374, 308 N.E.2d at 618.) Duty is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff. Whether the defendant and the plaintiff stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the plaintiff's benefit is a question of law for the court to determine. (*Cunis*, 56 Ill. 2d at 374, 308 N.E.2d at 618.) This court has stated that the primary factors that a court considers in determining the existence of a duty include:

> "(1) The foreseeability of injury to the plaintiff as a result of defendant's actions or inactions; (2) the magnitude of the burden to defendant of guarding against the injury and the consequences of placing that burden on the defendant; and (3) the currently prevailing public policies and social attitudes of the community." *Leesley v. West* (1988), 165 Ill. App. 3d 135, 141, 518 N.E.2d 758, 762.

■ In determining whether there exists a legal duty, the occurrence involved must not have been simply foreseeable; it must have been *reasonably* foreseeable. The imposition of a legal duty requires more than a mere possibility of occurrence. Not what actually happened, but what the reasonably prudent person would have foreseen as *likely* to happen, is the key to the question of reasonableness. *Cunis*, 56 Ill. 2d at 376, 308 N.E.2d at 619.

Historically, negligence could not be founded upon the breach of a

duty owed only to some person other than the plaintiff. (*Renslow*, 67 Ill. 2d at 355, 367 N.E.2d at 1254.) In two recent decisions, the Illinois Supreme Court has refused to extend the duty of health care professionals to third-party plaintiffs who had neither a direct physician-patient relationship nor a "special relationship" with either the plaintiff or with the health care provider. (*Estate of Johnson v. Condell Memorial Hospital* (1988), 119 Ill. 2d 496, 520 N.E.2d 37; *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 513 N.E.2d 387.) In *Condell*, the court held that a hospital had no duty to unknown third parties to restrain and control a patient admitted informally where a third party was killed during a subsequent police chase of the escaped patient. In *Kirk*, the plaintiff was a passenger in an automobile driven by a psychiatric patient. The defendant physician had prescribed medication for the patient on the date of the patient's release. Following the discharge, the patient consumed an alcoholic drink which in combination with the medication resulted in side effects that impaired the patient's driving ability. The plaintiff was injured when the patient drove off the roadway and struck a tree.

The *Kirk* court noted that other jurisdictions have limited the scope of the physician's duty to warn to situations in which there is, apart from the patient, a specifically identifiable, potential victim, rather than holding that a duty exists to the public generally. (*Kirk*, 117 Ill. 2d at 531, 513 N.E.2d at 398.) The court determined that, consistent with its holdings and with legislation based on social and public policy, a plaintiff could not maintain a medical malpractice action absent a direct physician-patient relationship between the doctor and the plaintiff, or a "special relationship" between the patient and the plaintiff (such as was present in *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 367 N.E.2d 1250). (*Kirk*, 117 Ill. 2d at 531, 513 N.E.2d at 399.) In concluding that the physician's duty of care should not be extended to the general public, that is, to an indeterminate class of potential plaintiffs, the court also pointed out that the legislature had recently enacted legislation to reduce the burden of litigation against health care professionals. *Kirk*, 117 Ill. 2d at 532, 512 N.E.2d at 399.

In examining the requirement of foreseeability to determine the legal duty of therapists to third persons, numerous courts have concluded that a therapist cannot be held liable for injuries inflicted upon third persons absent specific threats to a readily identifiable victim. (*Brady v. Hopper* (D. Colo. 1983), 570 F. Supp. 1333, 1338 (and cases cited therein), *aff'd* (10th Cir. 1984), 751 F.2d 329.) In *Thompson v. County of Alameda* (1980), 27 Cal. 3d 741, 614 P.2d 728, 167 Cal.

Rptr. 70, the California Supreme Court, declining to expand its prior decision in *Tarasoff*, refused to extend the duty of a county institution to warn an identifiable group of potential victims as to the violent propensities of a juvenile delinquent. In *Thompson*, prior to his release, the delinquent had indicated that he would, if released, take the life of a young child residing in the neighborhood, but named no specific victim. Within 24 hours of his release on temporary leave, the juvenile delinquent murdered the neighboring plaintiff's son. The court explained that *Tarasoff* involved an exception to the general rule that one owes no duty to control the conduct of another and that the therapist's duty to warn or protect another in *Tarasoff* arose because the decedent was the known, specifically foreseeable and identifiable victim of the patient's threats. (*Thompson*, 27 Cal. 3d at 751-52, 614 P.2d at 733, 167 Cal. Rptr. at 75.) The court emphasized that the therapist has no *general* duty to warn of each threat, but has a duty to act only where the therapist determines or should have determined that a patient poses a serious danger of violence to the foreseeable victim. The court recognized that the open and confidential character of psychotherapeutic dialogue encourages patients to express threats of violence, few of which are ever executed; moreover, a therapist should not be encouraged to reveal such threats routinely, because such disclosures could seriously disrupt the patient's relationship with his therapist and with the persons threatened. 27 Cal. 3d at 752, 614 P.2d at 734, 167 Cal. Rptr. at 76.

■ Based upon the prior discussion of the law, we believe the plaintiff must establish the following elements relating to the alleged duty owed in order to sustain her cause of action. First, the patient must make specific threat(s) of violence; second, the threat(s) must be directed at a specific and identified victim; and, third, a direct physician-patient relationship between the doctor and the plaintiff or a special relationship between the patient and the plaintiff. *Brady v. Hopper*, 570 F. Supp. at 1338-39; *Kirk*, 117 Ill. 2d at 531, 513 N.E.2d at 399.

■■ ■ We now consider whether the trial court properly granted defendant's motion for summary judgment. When the pleadings, depositions, and affidavits fail to establish an element of the plaintiff's cause of action, summary judgment is proper. (*Lindenmier v. City of Rockford* (1987), 156 Ill. App. 3d 76, 85, 508 N.E.2d 1201, 1208.) When a defendant files a motion for summary judgment, the plaintiff must come forward with evidence of negligence on the part of the defendant and with evidence that defendant's negligence was a proximate cause of the plaintiff's injuries. The supporting documents op-

posing a motion for summary judgment must recite facts and not mere conclusions or statements on information and belief. *Lindenmier*, 156 Ill. App. 3d at 85-86, 500 N.E.2d at 1208.

■ Even if we were to consider the stricken affidavits of Dr. Finkel, we conclude that neither the affidavits nor his prior deposition can establish that Joyce Eckhardt ever made specific threats of violence against her husband. In his deposition, Dr. Finkel's response in that regard is clear and unequivocal. Indeed, he reiterated in his amended affidavit that the death of Harold Eckhardt could not be specifically predicted, nor was it determinative that Joyce Eckhardt had ever threatened his life or physical well-being. To the extent that Dr. Finkel's affidavits attempt to create a genuine issue of material fact by stating, in conclusory fashion, that Dr. Kirts could reasonably foresee that Joyce's violent, homicidal acts would be directed toward her mother, sister, or her husband, Harold Eckhardt, we find them unpersuasive. We find that there was no reasonably foreseeable risk that Joyce Eckhardt would inflict harm on her husband. In the absence of any evidence that Joyce Eckhardt ever threatened her husband's life or physical well-being prior to the fatal shooting, plaintiff falls outside of the scope of defendant's duty. In other words, plaintiff's factual allegations and legal conclusions are insufficient to create a legal duty on the part of Dr. Kirts to protect plaintiff from the specific harm complained of. Since plaintiff has failed to establish the first two elements of the duty to warn, the trial court properly granted summary judgment to the defendant.

A "special relationship," the third element of the duty, was not presented to the trial court. Because we have found the trial court properly granted summary judgment on the issues presented to it, we see no need to determine if a "special relationship" existed in this case. We note that the determination of what constitutes a "special relationship" is a matter of law, not a matter of fact. *Kirk*, 117 Ill. 2d at 525.

We recognize the tragic and unfortunate consequences of the patient's actions in the case before us. But in view of the speculative nature of the risk of harm presented in this case, we believe that our disposition is consistent with the rationale of *Kirk* and *Condell* and with our recent decision in *Leesley*. Each of these decisions evinces a sound public policy against expanding the liability of health professionals to an indeterminate class of potential plaintiffs. We believe that the preferable rule is to limit the duty of health professionals to those cases involving specifically identifiable, potential victims as evidenced by specific threats of harm to them and where there is a spe-

cial relationship between plaintiff and doctor, or plaintiff and patient. Human behavior is simply too unpredictable and the field of psychotherapy presently too inexact to require that therapists be ultimately responsible for all the actions of their patients. (*Brady v. Hopper*, 570 F. Supp. at 1339.) To impose such a responsibility without limit would be to place an unacceptably severe burden on those who provide mental health care to the people of this State, ultimately reducing the opportunities for needed care.

The plaintiff has failed to set forth facts to arguably establish the element of the duty to warn contained in her cause of action. We, therefore, need not address plaintiff's arguments regarding the sufficiency of the expert opinion affidavits, nor do we address the issue of defendant's breach of duty as a proximate cause of plaintiff's injuries.

The judgment of the circuit court of De Kalb County is affirmed.

Affirmed.

INGLIS, J., concurs.

JUSTICE REINHARD, specially concurring:
Although I concur in the affirmance of the judgment for defendant, Thomas Kirts, M.D., I write specially because I cannot agree with the analysis of the majority, which fails to apply the duty test applicable to a defendant-physician set forth by our supreme court in *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 513 N.E.2d 387. While the failure of the parties to adequately present the duty issue in either the circuit court or this court may have led the majority to resolve the case as the parties framed the issues, I would decide the case on a separate ground not precisely raised by the parties for a proper adjudication under existing precedent. It is the responsibility of a reviewing court to reach a just result and to maintain a sound and uniform body of precedent, which may sometimes override the considerations of waiver that stem from the adversary character of our system. (*Hux v. Raben* (1967), 38 Ill. 2d 223, 224-25, 230 N.E.2d 831; see also *Schutzenhofer v. Granite City Steel Co.* (1982), 93 Ill. 2d 208, 210-11, 443 N.E.2d 563.) All factual matters necessary to sustain the judgment of the trial court and to decide the legal issue are present in the record so that the duty issue can be properly resolved in this court. See *Estate of Johnson v. Condell Memorial Hospital* (1988), 119 Ill. 2d 496, 502, 520 N.E.2d 37.

The majority has apparently adopted, in large part, the approach of the California Supreme Court in *Tarasoff v. Regents of the Univer-*

*sity of California* (1976), 17 Cal. 3d 425, 551 P.2d 334, 131 Cal. Rptr. 14, in determining the duty of a physician to a third-party nonpatient injured by the act of a patient undergoing psychiatric treatment with the physician. We need not examine authority from a foreign jurisdiction, however, as our supreme court, in *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 513 N.E.2d 387, has established the duty of a physician in Illinois. The court in *Kirk* stated that "a plaintiff cannot maintain a medical malpractice action absent a direct physician-patient relationship between the doctor and plaintiff or a special relationship, as present in *Renslow*, between the patient and the plaintiff." (*Kirk*, 117 Ill. 2d at 531, 513 N.E.2d at 399; see also *Estate of Johnson v. Condell Memorial Hospital* (1988), 119 Ill. 2d 496, 509, 520 N.E.2d 37.) In deciding the scope of the duty of a physician in Illinois, the supreme court considered decisions in other jurisdictions, including cases with holdings similar to the approach used by the majority herein, which focus on whether the victim is a specifically identifiable potential victim, and rejected them. *Kirk*, 117 Ill. 2d at 531, 513 N.E.2d at 398-99.

Applying the duty analysis set forth in *Kirk* to the facts of this case, it is clear that plaintiff's decedent had no direct physician-patient relationship with defendant. Nor is there a special relationship between the patient and the plaintiff's decedent, as was present in *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 367 N.E.2d 1250. In *Renslow*, a child not conceived at the time negligent acts were committed against its mother by a doctor and a hospital's employees was allowed to bring an action for the negligence directed against its mother. (*Renslow*, 67 Ill. 2d at 357-58, 367 N.E.2d at 1255.) Although I am not entirely certain whether the *Renslow* exception to the scope of the duty owed absent a direct physician-patient relationship is *sui generis*, until our supreme court more fully explains this exception I would limit any expansion of the physician's duty to third-person nonpatients to a *Renslow*-type situation.

For the foregoing reasons, I would affirm the circuit court's granting of summary judgment in favor of defendant.