WILLIAM E. REYNOLDS, Adm'r of the Estate of Marvin Burton, Deceased, Plaintiff, v. NATIONAL RAILROAD PASSENGER CORPORATION, d/b/a Amtrak, *et al.*, Defendants and Third-Party Plaintiffs (Elaine Fasano, Adm'r of the Estate of Robert Krabec, Deceased; Hinsdale Hospital *et al.*, Third-Party Defendants).

First District (6th Division)   No. 1—90—1576

Opinion filed June 28, 1991.

James A. Romanyak & Associates, of Chicago (James A. Romanyak and Gregory A. Stayart, of counsel), for appellants.

Cassiday, Schade & Gloor and Hinshaw, Culbertson, Moelmann, Hoban & Fuller, both of Chicago (Timothy J. Ashe, Michael J. Cucco, Lynn D. Dowd, D. Kendall Griffith, Alice K. Kush, Douglas J. Esp, and Robert G. Black, of counsel), for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

Third-party plaintiffs National Railroad Passenger Corporation, doing business as Amtrak (Amtrak), and Chicago Union Station (Union Station) filed an action for contribution against third-party defendants Hinsdale Hospital and Drs. Helge G. Franks, Douglas Gill, and Edwin E. Nebblett alleging medical malpractice in the treatment of Robert Krabec. Elaine Fasano, administrator of Krabec's estate, later joined in the action for contribution. The trial court granted third-party defendants' motion to dismiss all third-party complaints with prejudice for failure to state a cause of action. Only Amtrak and Union Station appeal; Fasano has not appealed the dismissal of her action for contribution.

The relevant facts are undisputed. On August 17, 1985, Krabec was voluntarily admitted to Hinsdale Hospital. Krabec was examined, diagnosed as alcoholic, and assigned to the alcoholism treatment unit of the hospital known as the New Day Center. Krabec underwent treatment for nine days. At approximately 1 p.m. on August 26, 1985, Krabec eloped from the hospital, and went to Union Station, where he had been employed as a security officer. Third-party defendants were not aware for several hours that Krabec had departed from the hospital.

Marvin Burton, a fellow employee of Krabec, was employed by Amtrak as a baggage supervisor. Krabec gained access to the security office and firearms locker at Union Station. Subsequently, Krabec shot and killed Burton at Union Station. Krabec then turned the gun on himself and committed suicide.

On October 17, 1986, plaintiff, William E. Reynolds, administrator of the estate of Burton, filed a wrongful death action against Fasano, administrator of Krabec's estate, Amtrak and Union Station. Reynolds alleged that Amtrak failed to provide a safe place to work and warn Burton of an unsafe condition on the premises within the meaning of the Federal Employers' Liability Act, 45 U.S.C. §§1 through 60 (1988). Reynolds' wrongful death action against Union Station alleged negligence in permitting Krabec to remain in its employ as an armed security guard knowing that he was dangerous, violent, psychotic, and posed an unreasonable risk of harm to Burton.

On August 18, 1987, Fasano brought a wrongful death action in the circuit court of Du Page County against all Krabec's medical care providers for their alleged failure to properly diagnose, treat and confine Krabec between August 17 and 26, 1985.

On June 23, 1989, Amtrak and Union Station filed the present third-party complaint under the Contribution Among Joint Tortfeasors Act (Ill. Rev. Stat. 1989, ch. 70, par. 301 *et seq.*) (the Act) against Hinsdale Hospital and Drs. Timothy Neufeld, Richard A. Matthies, Helge G. Frank, Douglas Gill, Edwin E. Nebblett and James S. Watson. (Only Hinsdale Hospital and Drs. Franks, Gill and Nebblett are involved in this appeal.) Amtrak and Union Station alleged that Krabec's medical care providers carelessly and negligently failed to properly diagnose and treat Krabec; failed to seek appropriate psychiatric or psychological consultation; failed to make proper diagnostic inquiries of Krabec as to the identity of the person, if any, who was the object of his paranoia and his plans for dealing with his paranoid delusions; and failed to control Krabec's behavior and activities.

On April 30, 1990, the trial court dismissed all third-party complaints for failure to state a cause of action pursuant to section 2—615 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—615). On appeal, Amtrak and Union Station (hereinafter collectively as Amtrak) maintain that third-party defendants breached their duty to Burton and that they are liable in tort for the actions of Krabec.

■■■■ It is well established that in order to prevail under a negligence theory, a complaint must set forth facts establishing the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and that, as a proximate cause, the plaintiff suffered damages. (*Estate of Johnson v. Condell Memorial Hospital* (1988), 119 Ill. 2d 496, 520 N.E.2d 37.) The existence of duty is a question of law for the court to determine. (*Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 440 N.E.2d 96.) The primary factors that a court considers in determining the existence of a duty include:

" '(1) The foreseeability of injury to the plaintiff as a result of defendant's actions or inactions; (2) the magnitude of the burden to defendant of guarding against the injury and the consequences of placing that burden on the defendant; and (3) the currently prevailing public policies and social attitudes of the community.' " *Eckhardt v. Kirts* (1989), 179 Ill. App. 3d 863, 870, 534 N.E.2d 1339, quoting *Leesley v. West* (1988), 165 Ill. App. 3d 135, 141, 518 N.E.2d 758.

In determining whether a legal duty exists, it must be a reasonably foreseeable occurrence, such that a reasonably prudent person would have foreseen it as likely to happen. The imposition of a legal duty requires something more significant than a mere possibility of occurrence. *Eckhart v. Kirts*, 179 Ill. App. 3d 863, 534 N.E.2d 1339.

In order to demonstrate a cognizable cause of action, plaintiff must establish the following elements relating to the alleged duty owed: (1) the patient must make specific threat(s) of violence; (2) the threat(s) must be directed at a specific and identified victim; and (3) a direct physician-patient relationship between the doctor and the plaintiff or a "special relationship" between the patient and the plaintiff. *Eckhardt v. Kirts*, 179 Ill. App. 3d 863, 534 N.E.2d 1339, citing *Brady v. Hopper* (D. Colo. 1983), 570 F. Supp. 1333, 1339, *aff'd* (10th Cir. 1984), 751 F.2d 329; *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 513 N.E.2d 387.

At the outset, we note that the record is devoid of any indication that Krabec made any specific threats of violence toward Burton while he was a patient in Hinsdale Hospital being treated by third-party defendants, thereby eliminating his ability to prevail under the first two elements.

We turn to the third factor, which focuses upon relationships that allow a plaintiff to establish a cause of action. Clearly, there was no direct physician-patient relationship between third-party defendants and Burton. The four "special relationships" which do give rise to a duty to protect another from harm are: (1) carrier-passenger, (2) innkeeper-guest; (3) business inviter-invitee; and (4) voluntary custodian-protectee under certain limited circumstances. In each of these relationships, the carrier, the innkeeper, the business inviter, and the voluntary custodian all owe their respective charges a duty to protect them from harm as long as they have the requisite " 'knowledge of previous incidents or special circumstances [that] would charge the owners [custodian, etc.] with knowledge of the dangers and the duty to anticipate it.' " *Comastro v. Village of Rosemont* (1984), 122 Ill. App. 3d 405, 408, 461 N.E.2d

616, 619, quoting *O'Brien v. Colonial Village, Inc.* (1970), 119 Ill. App. 2d 105, 108.

Amtrak maintains that a "special relationship" exists in the form of "custodian-protectee" because Krabec was an in-patient at Hinsdale Hospital. As such, the hospital as well as its medical staff voluntarily undertook to provide care and treatment to Krabec between August 17, 1985, through August 26, 1985. Amtrak also points out that third-party defendants prescribed drugs for Krabec.

■ After review of the circumstances, however, we find that Amtrak's reliance upon a "special relationship" in the nature of custodian-protectee is misplaced. Our supreme court has refused to extend the duty of health care professionals to third-party plaintiffs who had neither a direct physician-patient relationship nor a "special relationship" with either the plaintiff or with the health care provider. *Estate of Johnson v. Condell Memorial Hospital*, 119 Ill. 2d 496, 520 N.E.2d 37; *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d 507, 513 N.E.2d 387.

■ We find that third-party defendants owed no duty to Burton, who was a remote unidentified, unknown third party who became the victim in this unfortunate incident. Krabec made no specific threat of violence toward Burton, nor was there any "special relationship" between third-party defendants and Burton to establish the existence of a legal duty or knowledge that Krabec intended any harm to Burton. It simply was not within the realm of a reasonably foreseeable occurrence that Krabec would shoot a co-worker previously unmentioned to any of the staff members of the hospital during the nine-day course of his voluntary admission. Courts have consistently recognized that human behavior is too unpredictable and the field of psychotherapy presently too inexact to require that therapists be ultimately responsible for all the actions of their patients. *Eckhardt v. Kirts*, 179 Ill. App. 3d at 874, 534 N.E.2d at 1345, citing *Brady v. Hopper*, 570 F. Supp. at 1339.

We conclude, therefore, that the trial court properly granted third-party defendants' motion to dismiss because Amtrak failed to establish the existence of any legal duty extending from third-party defendants to Burton.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

RAKOWSKI, P.J., and LaPORTA, J., concur.