VICTORIA GORMAN, Plaintiff-Appellee, v. SHU-FANG CHEN, M.D., LTD., *et al.*, Defendants-Appellants.

Fifth District   No. 5—91—0250

Opinion filed July 29, 1992.

Heyl, Royster, Voelker & Allen, of Peoria, and Evans & Dixon, of Edwardsville (Gary M. Peplow, Karen L. Kendall, and Robert D. Tucker, of counsel), for appellants.

Armstrong Law Offices, of Edwardsville (Tad Armstrong, of counsel), for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Plaintiff, Victoria Gorman, brought this medical malpractice action against defendants Shu-Fang Chen, M.D. (Dr. Chen), and Shu-Fang Chen, M.D., Ltd., an entity for which Dr. Chen was the sole stockholder and director, to recover damages occasioned by Dr. Chen's negligence in rendering medical care and treatment for injuries sustained by plaintiff in a bicycle accident. Specifically, plaintiff alleged that Dr. Chen's failure to properly examine, or call in a specialist to examine, her temporomandibular joint (TMJ) led to a failure to diagnose and treat a fracture of her right temporomandibular condyle and resulted in plaintiff undergoing a total right TMJ reconstruc-

tion with condylectomy. Following a jury trial in the circuit court of Madison County, a verdict was rendered in favor of plaintiff and against defendants in the amount of $816,900. Defendants have appealed and argue that the trial court erred in: (1) allowing a plastic surgeon, Dr. Alvin Zook, to testify as an expert witness for plaintiff on the standard of care applicable to Dr. Chen, an orthopedic surgeon; (2) modifying an Illinois Pattern Jury Instruction as to the standard of care; and (3) permitting certain testimony by plaintiff's witness, Dr. Maurice Miller.

On March 31, 1986, plaintiff, age 18, and her mother, Shirley Sworm, were bicycling on Illinois Route 157 in Edwardsville, Illinois. Plaintiff lost control of her bicycle on a hill, hit some gravel and flew over the front of the bicycle. When Mrs. Sworm reached her daughter, she was lying unconscious on the ground with a laceration to her chin and her right leg positioned up by her shoulder. Plaintiff was taken by ambulance to Oliver-Anderson Hospital in Maryville, Illinois, and was first seen by emergency room physician Dr. Michael Wade. Dr. Wade examined plaintiff and reported that she complained about her left shoulder, chest, left breast, lip and right hip. Dr. Wade found plaintiff to be alert, neurologically within normal limits and oriented to time, place and person, with a short-term memory loss. Plaintiff's lower chin had a two-inch laceration, and her TMJ was without tenderness. Dr. Wade's final diagnosis was a dislocated right hip, fractured ribs, and pneumothorax (punctured lung). He stitched plaintiff's chin and ordered X rays of the cervical spine, spine and pelvis.

Mrs. Sworm asked to have plaintiff seen by Dr. Maurice Miller, an orthopedic surgeon and personal friend of the family. Dr. Miller was not on call, and his calls were being taken by Dr. Chen, who came to the hospital and saw plaintiff in the emergency room. Dr. Chen took a history and did a physical exam of plaintiff, which included examining her head and noting the laceration to her chin. He palpated plaintiff's jaw and noted there was no significant tenderness at the TMJ or mandible. Dr. Chen concluded from his examination of plaintiff that she had fractured ribs, a punctured lung, a dislocated hip and a laceration to her chin. Dr. Chen requested that Dr. Jong Kim, a general surgeon, treat plaintiff's punctured lung, which Dr. Kim accomplished by inserting a chest tube. Thereafter, Dr. Chen took plaintiff to surgery where, under anesthesia, he performed a closed reduction of her dislocated hip.

At trial, the following evidence was presented, *inter alia*. Mrs. Sworm testified that when she spoke with Dr. Chen about plaintiff's condition outside the emergency room, she asked if he was going to

X ray the plaintiff's neck because it was so swollen. Mrs. Sworm stated that Dr. Chen told her they would do a series of X rays after the life-threatening conditions were treated. Mrs. Sworm testified that on the second day of plaintiff's hospitalization she noted swelling to the plaintiff's jaw about the size of a goose egg and that the swelling remained for four or five days. Richard Berry, an off-duty paramedic and family friend, testified that upon plaintiff's admission he noticed numerous facial lacerations, abrasions and swelling about her mouth and lower jaw. Berry stated that plaintiff's speech was not normal, that she was having trouble opening and closing her mouth, and that three days after her admission, her face was still very swollen.

Larry Ashlock testified that when he visited plaintiff in the hospital during the first part of April, she had difficulty talking because her jaw was swollen and it looked like there was a "giant jaw breaker up by her cheek." John Sworm, plaintiff's stepfather, testified that on the day after her admission, there remained a pronounced lump on plaintiff's right side in front of her ear line which gradually decreased over the course of a week and had subsided by April 12. Plaintiff testified that the day after her admission to the hospital, her jaw had swelling about the size of a golf ball which persisted for four to five days before beginning to recede.

Dr. Chen testified that he saw plaintiff every day that she was in the hospital and that she never registered any complaint to him about her jaw or TMJ and that Mrs. Sworm never indicated that plaintiff had complaints about her jaw. Dr. Chen stated that he never saw any swelling to plaintiff's jaw while she was in the hospital and that neither plaintiff nor her mother made any complaints of swelling in relation to plaintiff's jaw or TMJ. Dr. Chen testified that there were no reports in plaintiff's hospital chart of pain, swelling or complaints concerning the jaw or TMJ. He admitted that no X ray of plaintiff's jaw or TMJ was done during her hospital stay.

Dr. Maurice Miller, the orthopedist originally requested by Mrs. Sworm, testified that he saw plaintiff in the hospital on April 12, 1986. Dr. Miller made no notations about jaw problems but stated that his attention was directed primarily to plaintiff's hip. Plaintiff was discharged from the hospital on April 14, 1986.

Dr. Harry Stadnyke, plaintiff's dentist, testified that he saw plaintiff on April 17 to check the braces on her teeth. Dr. Stadnyke examined plaintiff, found a discrepancy in her jaw movements and took X rays from which he diagnosed a fracture to plaintiff's right jaw. Dr. Stadnyke stated that he immediately referred plaintiff to an oral surgeon, Dr. Mark Travis. Dr. Travis testified that he initially treated

plaintiff by manipulating her mandible, or lower jaw, under general anesthetic, to obtain proper orientation with the upper jaw. Dr. Travis stated that he next proceeded with a nonsurgical closed-type reduction, where plaintiff's bite was held in place by rubber bands, to train the muscles to hold the jaw until scar tissue or a pseudo joint could form with the stump of the fracture site. Dr. Travis testified that on May 19, 1986, he wired plaintiff's jaws together and discussed the possibility of a need for surgery with plaintiff, because he was unsatisfied with the progress of the conservative treatment. On July 21, 1986, Dr. Travis performed a total joint implant to plaintiff's right jaw.

■ Defendants first contend that it was error to allow plaintiff's expert, a plastic surgeon, to testify concerning the standard of care applicable to Dr. Chen, an orthopedic surgeon. To establish negligent medical malpractice, the plaintiff must prove the proper standard of care by which to measure the defendant practitioner's conduct, a negligent breach of that standard, and a resulting injury proximately caused by the practitioner's lack of skill or care. (*Novey v. Kishwaukee Community Health Services Center* (1988), 176 Ill. App. 3d 674, 677, 531 N.E.2d 427, 429.) Except where the negligence is so grossly apparent or within the everyday knowledge of a lay person, expert testimony is required to establish the standard of care applicable to the defendant practitioner and breach of that standard. *Novey*, 176 Ill. App. 3d at 677, 531 N.E.2d at 429.

■ Section 8—2501 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 8—2501) states the qualifications for expert witnesses in medical malpractice actions. Section 8—2501 provides:

"In any case in which the standard of care given by a medical professional is at issue, the court shall apply the following standards to determine if a witness qualifies as an expert witness and can testify on the issue of the appropriate standard of care.

(a) Relationship of the medical specialties of the witness to the medical problem or problems and the type of treatment administered in the case;

(b) Whether the witness has devoted a substantial portion of his or her time to the practice of medicine, teaching or University based research in relation to the medical care and type of treatment at issue which gave rise to the medical problem of which the plaintiff complains;

(c) whether the witness is licensed in the same profession as the defendant; and

(d) whether, in the case against a nonspecialist, the witness can demonstrate a sufficient familiarity with the standard of care practiced in this State." (Ill. Rev. Stat. 1989, ch. 110, par. 8—2501.)

The determination of whether a licensed physician is qualified to testify as a medical expert in a malpractice action is a matter resting within the sound discretion of the trial court. *Smock v. Hale* (1990), 197 Ill. App. 3d 732, 739, 555 N.E.2d 74, 78.

In the instant case, defendants admit that plaintiff's expert, Dr. Zook, met the standards set forth in paragraphs (b) and (c) of section 8—2501, and that paragraph (d) is inapplicable. Defendants argue that Dr. Zook, testifying as a plastic surgeon serving as an attending physician in a multiple-trauma case, did not meet the requirements of paragraph (a) of the statute because he was unqualified to render an opinion "as to whether or not Dr. Chen, serving as an attending orthopedic surgeon, deviated from acceptable medical practice." This contention is without merit.

In *Petkus v. Girzadas* (1988), 177 Ill. App. 3d 323, 532 N.E.2d 333, the appellate court held that the testimony of the plaintiff's expert witness, a cardiologist, was sufficient to preclude entry of summary judgment for defendants and against plaintiff in a medical malpractice action which alleged that negligent post-operative treatment of the deceased by defendant orthopedists resulted in cardiac arrest. The defendants in *Petkus* argued that the plaintiff must establish the knowledge and skill of an orthopedic surgeon in handling a cardiac condition. However, the *Petkus* court held that the diagnosis and treatment restricted to defendants' narrow specialty was not at issue where the alleged negligence stemmed from the defendants' broader, general post-operative medical care of the decedent. *Petkus*, 177 Ill. App. 3d at 331, 532 N.E.2d at 338.

"Decedent died of congestive heart failure, not a broken leg. Defendants' skills, experience or knowledge as orthopedic surgeons are not relevant. Defendants' diagnosis or surgical treatment of decedent is not at issue. We are faced only with the narrow question of the competency of an expert witness to testify to minimum standards of *general* medical practice in the absence of familiarity with the standards of *specialized* orthopedic care. The expert's testimony should not be excluded where the standards to which he proposes to testify are minimum standards applicable to any physician rendering post-operative care to a cardiac patient. The facts sufficiently demonstrate that the standard of practice of such a physician is

within [plaintiff's expert's] scope of knowledge." (Emphasis in original.) *Petkus*, 177 Ill. App. 3d at 328-29, 532 N.E.2d at 337.

In *Smock*, the appellate court held that a gastrointestinal surgeon was qualified to testify as an expert witness for the plaintiff in a medical malpractice case involving the alleged negligent pregnancy management of a Crohn's disease victim by defendant family practitioner. The *Smock* court found that where plaintiff's expert specialized in the surgical treatment of intestinal diseases and had successfully treated pregnant patients with a history of Crohn's disease, he was familiar with the medical issues in the action and therefore qualified to testify under section 8—2501, despite the fact that the expert was unfamiliar with the standard of care imposed upon family practice physicians in southern Illinois. *Smock*, 197 Ill. App. 3d at 739-40, 555 N.E.2d at 78-79.

■ Here, as in *Petkus*, our focus is on the competency of the expert witness to testify to standards of general medical practice rather than to the standards of specialized orthopedic care. Plaintiff's expert, Dr. Zook, is a licensed physician who has been the "attending physician" for numerous patients throughout his career. Additionally, Dr. Zook is board certified in general surgery, thoracic and cardiovascular surgery and plastic surgery and has training and experience in the treatment of fractures of the jaw. Therefore, as in *Smock*, Dr. Zook's educational and employment background insured his familiarity with the medical issues involved in this action and qualified him to testify under section 8—2501. Thus, the trial court did not err in allowing Dr. Zook to testify concerning the standard of care applicable herein.

■ However, in the instant case it was unnecessary for plaintiff to rely on Dr. Zook to establish the standard of care and the breach thereof, because that testimony was supplied by Dr. Chen himself. It is well settled that where expert testimony is required to establish the applicable standard of care, the testimony of the defendant doctor may suffice to establish that standard. *Rohe v. Shivde* (1990), 203 Ill. App. 3d 181, 193, 560 N.E.2d 1113, 1121; *Novey*, 176 Ill. App. 3d at 679, 531 N.E.2d at 430; see also *Fawcett v. Reinertsen* (1989), 131 Ill. 2d 380, 385-86, 546 N.E.2d 558, 560.

Here, pursuant to a request to admit facts which defined "attending physician" as "the primary care physician in charge of the overall care of a patient from the time of his appointment to the position of attending physician through the date of discharge," the jury was ordered by the court to find as fact that "from the time of his initial examination of Victoria Gorman on March 31, 1986, through the date of her discharge from Anderson Hospital, Shu-Fang Chen, M.D., was

the attending physician of Victoria Gorman." Dr. Chen established the standard of care applicable to an attending physician when he testified during direct examination by plaintiff's counsel, Tad Armstrong:

"DR. CHEN: The attending physician [is] in charge of coordinating overall care of patient. You don't take care of everything. I couldn't. Nobody could.

\* \* \*

MR. ARMSTRONG: Doctor, I understand that you may not be able to take care of everything but when you suspect a problem, you should call in a specialist to take care of it; is that correct?

DR. CHEN: That's correct.

MR. ARMSTRONG: And as the attending physician you would have this responsibility?

DR. CHEN: Yes."

Further testimony of Dr. Chen established his breach of this standard of care, *i.e.*, that although he does not have the expertise to treat every condition, when he suspects a problem he should call in a specialist and, as the attending physician, he has the responsibility to call in a specialist. Dr. Chen testified that he had never treated a fracture of the TMJ, that he was "not at all" good at problems with the TMJ, and that he did not treat above the neck. In fact, Dr. Chen admitted, "I am not expert in this and I don't have any idea what is proper TMJ examination." Dr. Chen further admitted that although he did not know whether or not he had the expertise to feel a fracture of the jaw with his fingers alone, he suspected the possibility of a fracture and was actually looking for a fracture of the jaw when he examined plaintiff's TMJ. Therefore, where the record shows that Dr. Chen did not call in a specialist, despite his responsibility to do so under the circumstances, we believe plaintiff could have adequately established the standard of care applicable and the breach thereof by relying solely on Dr. Chen's testimony.

■ Defendants next argue that the trial court erred in modifying Illinois Pattern Jury Instructions, Civil, No. 105.01 (2d ed. 1971) (hereinafter IPI Civil 2d). Illinois Supreme Court Rule 239(a) (134 Ill. 2d R. 239(a)) provides, in general, that whenever an Illinois Pattern Jury Instruction contains an instruction applicable to the case, and the court determines that the jury should be instructed on that issue, "the IPI instruction shall be used, unless the court determines that it does not accurately state the law." (134 Ill. 2d R. 239(a).) However, this court has held that a violation of Rule 239(a) is not reversible error where the instruction given is neither partial, misleading, or argu-

mentative and accurately states the law such that no prejudice occurs. (See *Berry v. American Commercial Barge Lines* (1983), 114 Ill. App. 3d 354, 372-73, 450 N.E.2d 436, 448-49, *cert. denied* (1984), 465 U.S. 1029, 79 L. Ed. 2d 692, 104 S. Ct. 1290; see also *Law v. Central Illinois Public Service Co.* (1980), 86 Ill. App. 3d 701, 707, 408 N.E.2d 74, 78-79.) We believe that the instruction complained of here accurately states the law and that no prejudice accrued to defendants from giving the modified instruction.

IPI Civil 2d No. 105.01 reads as follows:

> "In treating a patient, a doctor must possess and apply the knowledge and use the skill and care that is ordinarily used by reasonably well-qualified doctors in the locality in which he practices or in similar localities in similar cases and circumstances. A failure to do so is a form of negligence that is called malpractice.
>
> The only way in which you may decide whether the defendant possessed and applied the knowledge and used the skill and care which the law required of him is from evidence presented in this trial by doctors called as expert witnesses. You must not attempt to determine this question from any personal knowledge you have."

In the case at bar, the first paragraph of this instruction was modified to read:

> "In treating a patient, a physician acting as that patient's attending physician must possess and apply the knowledge and use the skill and care that is ordinarily used by a reasonably well qualified attending physician in the locality in which he practices or in similar localities in similar cases and circumstances. A failure to do so is a form of negligence that is called malpractice."

Defendants argue that the use of the words "attending physician" in the instruction implies to the jury that there is a special duty imposed upon an attending physician that ordinarily does not exist. However, we agree with plaintiff that where the only difference in the instruction is that the label of "attending physician" was used instead of "doctor," and where the jury had been ordered to find as fact that Dr. Chen was the attending physician, the modification does not alter the duty imposed in any respect. As the trial court stated upon allowing the modification: "It particularizes the instruction for this case to refer to the type of physician that we are dealing with, which I think is appropriate, but it doesn't—it's not an attempt to reword what the law is ***."

The trial court's order denying defendants' post-trial motion held that "[t]he use of the phrase 'attending physician' in no way prejudiced the defendants herein because such phrase was simple, brief, impartial, free from argument, and set forth the uncontroverted and established facts." Because we believe the trial court properly applied the reasoning set forth by this court in *Berry*, we find that any error arising from the use of the modified instruction was harmless. *Berry*, 114 Ill. App. 3d at 372-73, 450 N.E.2d at 448-49.

■ Defendants next contend that the trial court erred in allowing a portion of Dr. Maurice Miller's testimony to be presented to the jury as evidence on behalf of plaintiff. Plaintiff argues that defendants have waived this issue because it was not included in defendants' post-trial motion, citing section 2—1202(b) of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1202(b)) and Supreme Court Rule 366(b)(2)(iii) (134 Ill. 2d R. 366(b)(2)(iii)). Defendants respond that the post-trial motion stated, *inter alia*, that "[t]he verdict of the jury was the result of mistake on the part of the jury," and they argue that this mistake was occasioned by the improper testimony of Dr. Miller.

The purpose of requiring parties to make post-trial motions is to afford the trial judge the opportunity to review his decisions and to prevent parties from raising arguments on appeal which the trial judge did not have an opportunity to consider. (*Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344, 348-50, 415 N.E.2d 337, 339; *Centracchio v. Rossi Construction Co.* (1988), 170 Ill. App. 3d 1007, 1011, 524 N.E.2d 1000, 1002.) Section 2—1202(b) requires that "[t]he post-trial motion must contain the points relied upon, particularly specifying the grounds in support thereof." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1202(b).) We conclude that the defendants' post-trial motion was not sufficiently specific to preserve this issue for review, where the allegation of error contained therein does not specify the grounds upon which it is based and is therefore inadequate under the standards enunciated in *Brown* and in section 2—1202(b). (See *Micklos v. Highsmith* (1986), 149 Ill. App. 3d 779, 787-88, 500 N.E.2d 1154, 1160.) We thus do not reach the issue of whether Dr. Miller's testimony was erroneously admitted into evidence.

■ Finally, without extended discussion, we reject plaintiff's claim that she should be awarded attorney fees and costs. Plaintiff makes this claim pursuant to Supreme Court Rule 375 (134 Ill. 2d R. 375), on the grounds that defendants' appeal is frivolous and was not taken in good faith. Regardless of the merit of the other issues, we

agree with defendants that questioning the trial court's decision to modify a pattern jury instruction cannot be deemed frivolous.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

GOLDENHERSH, P.J., and H. LEWIS, J., concur.