JEFFREY WEST, a Minor, by his Mother and Next Friend, Rosemary West, Plaintiff-Appellant, v. DOUGLAS ADELMANN, Defendant-Appellee (St. Joseph Hospital *et al.*, Defendants).

First District (3rd Division)   No. 1—91—1888

Opinion filed March 31, 1993.

Goldberg & Goldberg and David A. Novoselsky & Associates, both of Chicago (David A. Novoselsky and Linda A. Bryceland, of counsel), for appellant.

Lord, Bissell & Brook, of Chicago (Robert B. Austin, Diane I. Jennings, and Mary Ellen Busch, of counsel), for appellee.

JUSTICE GREIMAN delivered the opinion of the court:
Plaintiff Jeffrey West, a minor, appeals the trial court's summary

judgment in favor of defendant Douglas Adelmann in plaintiff's medical malpractice action.

Plaintiff argues on appeal that a question of fact exists as to whether defendant deviated from the standard of care considering the professional relationship between the parties and where plaintiff's expert, in part, conditioned his testimony on the nature of the relationship between the physicians treating plaintiff.

We reverse and remand since plaintiff has come forward with sufficient evidence of the defendant's conduct to present a genuine issue of material fact based upon expert testimony to be considered by the jury.

Plaintiff fell from an all-terrain vehicle on February 28, 1985, and was taken to St. Joseph Medical Center in Joliet, Illinois, where he was found to have fractured his left leg in three places: the femur, tibia and fibula. Dr. Dwight Woiteshek initially treated plaintiff on February 28 by placing a pin in his lower leg, casting the lower portion and placing plaintiff in traction to align the fractured thigh bone.

Defendant practiced with Dr. Woiteshek in Adelmann-Woiteshek Orthopedic Surgeons, S.C., a medical partnership, and made hospital visits to plaintiff, apparently in rotation with Dr. Woiteshek, on March 3, 5, 7, 10, 11 and 13. Defendant also cared for plaintiff from March 15-18 when Dr. Woiteshek was on vacation.

On March 15, defendant noticed a motor palsy (loss of nerve strength) in plaintiff's left leg and padded the cast at the top to alleviate the problem. On March 17, plaintiff complained of pain in his ankle, which defendant initially relieved by adjusting plaintiff's foot inside the cast. When the pain persisted in the heel area, defendant found a blister there and treated it at 1 a.m. on March 18 by cutting a "window" in the cast, repadding the area and taping the cut-out section into its original position.

On March 18, defendant discovered through new X rays that there had been a shortening of the leg since X rays apparently taken two days prior.

There was a shortening of both the lower and upper portions of the leg by approximately one inch. That evening, defendant informed plaintiff's parents what the X rays revealed and urged them to allow him to recast the leg as soon as possible, including changing the pin, in order to avoid any further damage. Plaintiff's mother immediately consulted with doctors at another hospital and plaintiff was moved to another hospital that night, without any further treatment being administered by defendant.

Plaintiff's expert witness, Dr. Wilfred Yoslow, an orthopedic

surgeon, testified that plaintiff's condition required a pin change and a cast change within two or three days of the initial treatment and that Dr. Woiteshek deviated from accepted standards of orthopedic surgery when he failed to take such action. It was Dr. Yoslow's opinion that Dr. Woiteshek should have transferred the pin or put a new pin into the distal end of the femur and should have used a long leg cast instead of a half cast. During those days immediately after plaintiff's admission to the hospital, defendant visited plaintiff, beginning on March 3, the third day plaintiff was in the hospital.

Dr. Yoslow stated that the injuries caused by the failure to change the pin and cast included an infection under the cast, a blister on the left heel, shortening of the tibia and femur and a peroneal nerve palsy.

Dr. Yoslow initially had no criticism of defendant's care; however, his opinion was based on an assumption that defendant was covering (or "marking time") for Dr. Woiteshek when he saw plaintiff on alternate days and supervised plaintiff's treatment during Dr. Woiteshek's vacation. Dr. Yoslow assumed that defendant did not have equal responsibility with Dr. Woiteshek in the care of plaintiff. However, Dr. Yoslow acknowledges that he knew nothing of the arrangement of responsibility between the two doctors. Further, he testified that the hospital records suggest that Dr. Woiteshek and defendant were not in complete accord as to the plan of plaintiff's treatment.

Later in his deposition, Dr. Yoslow qualifies his initial impression by stating:

> "It's a question of how much of an agent was he [defendant] in the care of this individual. He was merely—if he was merely someone who just marked time, that is one thing, referring to the opinions of his associate. Whether he was taking over the active treatment of the individual is another thing."

Dr. Yoslow testified that he believed that two doctors could not be equally responsible for the care of a patient, and if defendant took over the care of plaintiff when Dr. Woiteshek was on vacation, defendant should have changed the method of treatment. Dr. Yoslow found that plaintiff's condition worsened between March 15 and March 18, when Dr. Woiteshek was on vacation, and that if defendant was in fact responsible for plaintiff's treatment, then he should have taken off the cast, examined the leg, checked the pin, changed the position of the pin and recast the leg.

While we are guided by the medical opinion of plaintiff's expert witness, we need not be bound by his ruminations about agency, multiple proximate causes or other matters that are for the court as a matter of law or the jury after proper instruction.

In a medical malpractice action the plaintiff must generally present expert testimony to establish: (1) the proper standard of care against which the defendant's conduct is measured; (2) an unskilled or negligent deviation from the applicable standard of care; and (3) an injury that was proximately caused by this breach of the applicable standard of care. *Addison v. Whittenberg* (1988), 124 Ill. 2d 287, 297, 529 N.E.2d 552; *Gorman v. Shu-Fang Chen, M.D., Ltd.* (1992), 231 Ill. App. 3d 982, 986, 596 N.E.2d 1350; *Roach v. Springfield Clinic* (1991), 223 Ill. App. 3d 597, 612, 585 N.E.2d 1070; *Smith v. South Shore Hospital* (1989), 187 Ill. App. 3d 847, 854, 543 N.E.2d 868.

When the trial court granted summary judgment in favor of defendant, it stated:

"I think the defendant Dr. Adlemann [*sic*] has gone forward and made a prima facie showing entitling him to summary judgment. In response to that prima facie showing, what you're pointing to are not—is not a specific line of questioning as to where Dr. Adlemann [*sic*] deviated from the standard of care, but rather something more general than that, and at this point I think what's missing is Dr. Adlemann [sic] saying he took over the treatment for the plaintiff."

Plaintiff contends that summary judgment was improperly granted by the trial court because the court focused upon whether defendant made a specific declaration that he had taken over plaintiff's care from Dr. Woiteshek and not upon whether defendant's actions allowed a reasonable inference that defendant and plaintiff enjoyed a physician-patient relationship, thus creating a duty of care for defendant.

Plaintiff argues that such a reasonable inference may be drawn from defendant's actions in his treatment of plaintiff during March 15-18 that he did assume responsibility for plaintiff's treatment and had the authority to change that treatment plan without conferring with or obtaining authorization from Dr. Woiteshek.

Additionally, defendant has never claimed that Dr. Woiteshek's authorization was required before he might change plaintiff's treatment program.

A motion for summary judgment is to be granted if the pleadings, depositions and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Addison*, 124 Ill. 2d at 294.

■ A nonmovant plaintiff need not disprove facts produced by defendant, but merely must establish that there is factual evidence showing another version of the relevant events, thus creating a genu-

ine issue as to which version is true. *Kennedy v. Bobbie & Clyde's, Inc.* (1992), 227 Ill. App. 3d 856, 861, 592 N.E.2d 357; *Beals v. Huffman* (1986), 146 Ill. App. 3d 30, 496 N.E.2d 281.

Dr. Yoslow testified that the applicable standard of care in a case such as plaintiff's required a pin and cast change within two or three days of the initial treatment by Dr. Woiteshek. Defendant does not dispute that neither he nor Dr. Woiteshek changed the pin or cast at any time.

It is for the trier of fact to determine the weight given an expert's opinion regarding the applicable standard of care. *Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 260, 381 N.E.2d 279; *Novey v. Kishwaukee Community Health Services Center* (1988), 176 Ill. App. 3d 674, 679, 531 N.E.2d 427; *Piano v. Davison* (1987), 157 Ill. App. 3d 649, 675, 510 N.E.2d 1066.

█ In reviewing the propriety of a summary judgment determination, an appellate court applies a *de novo* standard of review to determine whether a genuine issue of material fact exists. (*Demos v. National Bank of Greece* (1991), 209 Ill. App. 3d 655, 659, 567 N.E.2d 1083.) Whether a physician-patient relationship exists depends on the facts and circumstances of each case and is for the trier of fact to determine as upon proper instruction. (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 525, 513 N.E.2d 387.) While plaintiff's expert, Dr. Yoslow, may have given his opinion regarding agency or individual legal responsibility, the trial court is certainly not bound by his analysis of legal issues, although we understand that here they are interwoven with the medical issue. However, a fair reading of Dr. Yoslow's deposition clearly establishes that he believed that if defendant did have a duty to treat plaintiff after the 15th of March, then he deviated from the applicable standard of care.

█ To maintain a medical malpractice action, a plaintiff must have either a direct physician-patient relationship between himself and the doctor or show there exists a special relationship between defendant and the patient. *Kirk*, 117 Ill. 2d at 531; *Reynolds v. National R.R. Passenger Corp.* (1991), 216 Ill. App. 3d 334, 338, 576 N.E.2d 1041; *Heigert v. Riedel* (1990), 206 Ill. App. 3d 556, 562-63, 565 N.E.2d 60; *Britton v. Soltes* (1990), 205 Ill. App. 3d 943, 944, 563 N.E.2d 910. See also *O'Hara v. Holy Cross Hospital* (1990), 137 Ill. 2d 332, 338-39, 561 N.E.2d 18; *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 367 N.E.2d 1250.

In its ruling, the trial court relies on the notion that defendant never formally took over plaintiff's care from Dr. Woiteshek.

Defendant's liability is not ineluctably linked to whether he

acknowledges he "took over" responsibilities from Dr. Woiteshek. Although plaintiff's expert shared his view that only one doctor could be in charge of a patient, it is for the court to determine as a matter of law whether a particular physician has a duty to a particular person at a particular time.

█ We find that plaintiff has clearly established evidence which raises a question as to whether defendant, through his actions in treating and caring for plaintiff, established a primary physician-patient relationship. The evidence discloses that defendant checked on plaintiff every other day while plaintiff was in the hospital, approximately half of the time. Plaintiff sought defendant's assistance when he was in pain and accepted defendant's care of him. Plaintiff never stated that he would follow only Dr. Woiteshek's medical advice, and never rejected defendant's treatment of him until he voluntarily removed himself to another hospital. Further, defendant did not consult with Dr. Woiteshek when plaintiff consistently complained of pain; defendant made adjustments to the cast, including sawing a window in the cast to ease plaintiff's discomfort; and defendant finally recommended that the cast and pin be changed.

We also reject defendant's argument that plaintiff's expert unequivocally stated that defendant did not deviate from the applicable standard of care. It is clear from the record what Dr. Yoslow considered to be the standard of care in such a case: changing the pin and cast within two to three days of the initial treatment, and use of a long leg cast. Dr. Yoslow was sufficiently clear what such duty of care entailed and opined that if defendant had taken over plaintiff's care, then he deviated from that standard of care.

Finally, we must express our curiosity about the varying responsibilities of a physician who is apparently in charge of a patient's treatment and a physician who "marks time" by checking in on that physician's patient on alternating days. While we are not sure of the meaning of "marking time," we certainly would not want our children or spouses to be under the care of a physician who is merely "marking time." However, we need not concern ourselves in this regard since there is ample evidence that defendant was in charge of plaintiff's case after Dr. Woiteshek went on vacation.

A genuine issue of material fact exists as to whether defendant deviated from the applicable standard of care and summary judgment was improper.

Reversed and remanded.

RIZZI and CERDA, JJ., concur.