FIFTH DIVISION

                                                September 1, 2000 

No. 1-99-3183

ROSA KRESIN,

Plaintiff-Appellee,

v.

SEARS, ROEBUCK AND COMPANY, a New York Corporation, and ALFREDO E. JIJON,

Defendants-Appellants. 

)

)

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

Maureen Durkin Roy,

Judge Presiding.

PRESIDING JUSTICE QUINN delivered the opinion of the court:

Plaintiff, Rosa Kresin (Kresin), brought suit against defendants Sears Roebuck and Company (Sears) and Alfredo Jijon (Jijon) (collectively defendants) for injuries she sustained when Jijon, a Sears employee, struck her as he backed a van out of a Sears Automotive Center (Auto Center) in St. Charles, Illinois.  A jury returned a verdict in Kresin's favor in the amount of $16.5 million, which was reduced to $15,691,690 million after deducting 5% for Kresin's negligence.  Defendants contend on appeal that: (1) 
the jury's verdict with respect to Sears' liability was against the manifest weight of the evidence; (2) the jury's allocation of 60% of the fault to Sears was against the manifest weight of the evidence; and (3) the jury's damage award was excessive.  For the reasons that follow, we affirm.

Sears operates a retail store with an automotive center at the Charlestown Mall in St. Charles, Illinois.  On June 1, 1996, Rosa Kresin, age 73 at the time of the incident, shopped at the Sears Auto Center and purchased a new battery for her vehicle.  At approximately 1:40 p.m., Kresin used the "Diehard Express" door to leave the store.  The Diehard Express door is located next to the service bay area, which is used to service vehicles.

Jijon was an employee of Sears at the time and was driving a Chevrolet Astro van that had been recently serviced in the service bay area nearest the Diehard Express door.  Jijon backed the van out of the service bay and hit Kresin, who was crushed under the van and suffered severe injuries.  

Count I of Kresin's complaint was based upon the doctrine of 
respondeat
 
superior
 and alleged that Jijon, individually and as an employee of Sears, failed to exercise ordinary care in the operation of the van and that his failure to do so proximately caused Kresin's injuries.  Count II of Kresin's complaint alleged, 
inter
 
alia
, that Sears failed to adequately train and instruct its employees regarding the safety procedures applicable to the operation of vehicles in close proximity to the Diehard Express door of the store's Auto Center.

During trial, Edward Sosniak testified that, at the time of the accident, he was the store manager.  Sosniak testified regarding the physical layout of the store and stated that, in order for customers to enter and exit the Sears store, they had to walk out through the parking lot that adjoined the Auto Center.  Sosniak testified that he was aware that vehicles were backed out of the service bay area through the pedestrian area and accompanying parking lot.  

After describing the store layout, Sosniak was asked whether one of the safety issues addressed while he was store manager related to the danger created by both vehicle and foot traffic when backing vehicles out of the service bay area.  Sosniak agreed that this issue had been raised and that there was concern "about the safety of backing out of these bays."  He testified that, during his period as store manager, safety meetings were held and employees were told to be careful and to use common sense when backing out of the service bay area to avoid colliding with other vehicles or pedestrians.  Despite this concern, Sosniak admitted that there were no warning signs posted for pedestrians.  There were only two signs posted in the Auto Center regarding safety: one sign asked customers not to park in front of the service bay doors and the other sign, posted along the walkway adjacent to the service bay area leading from the Diehard Express entrance/exit, stated, "Safety Requirements Prohibit Customers From Entering Work Area."

Sosniak also admitted that Sears had an employee safety and health manual which, among other items, required employees to check behind a vehicle before backing up.  However, Sosniak further admitted that the safety manual was not provided to employees.  

Both Alan Delbusto and Robert Ream, automotive technicians employed by Sears at the time of the accident, testified that they never received a safety manual and were never given instructions about safety precautions to use when backing vehicles out of the service bay area.  

Jijon also testified that he did not receive a safety manual and that he did not receive any training with regard to backing out of the service bay area.  Jijon testified that he was told to "look out" and "be careful" and that he thought that these instructions were sufficient because it was common sense to check behind a vehicle before backing out.  On the date of the accident, Jijon did not walk behind the van before he backed out of the service bay area, nor did he give a warning before he backed out.  Jijon admitted that he did not look in the mirror nor does he remember if he turned and looked over his shoulder to check for clearance before backing out.  Jijon testified that he "glanced towards the driveway" behind the van before initially backing up, stopped when the front of the van was even with the doorway to allow traffic to clear, and continued to back up.  The van only went a short distance before stopping abruptly after hitting Kresin, who landed underneath the van with her head near the right rear tire.  Kresin has no memory of the accident and could not testify as to what happened.  

Kresin suffered severe injuries as a result of the accident, including facial, rib, leg and collarbone fractures, and a skull fracture which caused permanent blindness.  She underwent multiple surgical procedures and has a permanent shunt underneath her skin from her head to her abdominal cavity to drain excess fluid.  

Kresin is also wheelchair bound and can no longer stand or walk unaided.  She is incontinent and cannot shower, bath or use the bathroom without assistance.  Furthermore, she is only able to make minimal movements with her left leg and suffers from a flexion contracture in her left arm and hand.  This condition leaves her unable to straighten her left elbow and causes her left hand to be bent over with the fingers clinched back in a clawed or fist position.    

Kresin remained in the hospital for approximately two months after the accident.  During her hospital stay, she developed several infections, including  hydrocephalus and meningitis.  Kresin also suffered a stroke, which caused paralysis in her left leg and partial weakness in her leg and arm.  

Kresin was then transferred to a nursing home facility where she resided for approximately nine months and received speech, occupational and physical therapy.  She left the nursing home in May 1997 and moved in with her son and his family.   

Prior to the accident, Kresin was in good health.  She lived alone, maintained her home, drove a vehicle and did her own shopping.  Now, she requires 24-hour-a-day assistance.  At the time of trial, an aide provided care five times a week with Kresin's son and other family members providing care the rest of the time.  In her deposition testimony, Dr. Elizabeth Joseph testified that, in her opinion, Kresin would never be independent in the activities of daily living. 

At the close of Kresin's case, the trial court denied Sears' motion for a directed verdict and found that she had established that Sears failed to adequately train and instruct its employees with respect to backing vehicles out of the service bay area. 

At the close of evidence, the jury returned a verdict in Kresin's favor, itemized as follows:

Reasonable medical expenses $176,000

Present cash value of future

reasonable medical expenses    $  223,380

reasonable expense of past 

caretaking    $  187,000

Present cash value of future 

reasonable care taking    $  931,188

Pain and suffering present and future    $6,000,000

Disability    $7,000,000

Disfigurement    $2,000,000.

The jury found Kresin 5% at fault, Jijon 35% at fault and Sears 60% at fault for a total award of $15,691,690.

Sears then filed a posttrial motion seeking a judgment notwithstanding the verdict, a new trial on liability and damages, or, in the alternative, 
remittitur
.  The trial court denied Sears' motion and this timely appeal followed.

Before turning to the merits, we first address the parties' procedural arguments.  Kresin asserts that Sears' challenge to the finding of liability in count I is waived because Sears failed to challenge count I in its posttrial motion.  Kresin argues that the entire argument presented by Sears on the issue of its liability is directed solely to the evidence as it relates to count II.  In response, Sears argues that the posttrial motion asked the court to grant a judgment notwithstanding the verdict in favor of Sears on count II, to vacate the jury's allocation of fault, and order a new trial.  Sears asserts that because its posttrial motion requested a new trial, this request encompassed a new trial on count I as well.

Sears' posttrial motion stated as follows:

"For the reasons stated herein and in Defen-

dants' Memorandum in Support of Their Posttrial Motion, defendants respectfully request that this Court grant judgment notwithstanding the verdict in favor of Sears on count II, vacate the jury's allocation of fault, and order a new trial, or in the alternative, a substantial remittitur."

Posttrial motions are required so as to afford the trial court the opportunity to review decisions and to prevent parties from raising arguments on appeal which the trial court did not have the opportunity to consider.  
Gorman v. Shu-Fang Chen, M.D., Ltd.
, 231 Ill. App. 3d 982, 991, 596 N.E.2d 1350 (1992).  Pursuant to section 2-1202(b) of the Code of Civil Procedure, "[t]he posttrial motion must contain the points relied upon, particlularly specifying the grounds and support thereof, and must state the relief desired, as for example, the entry of a judgment, the granting of a new trial or other appropriate relief."   735 ILCS 5/2-1202(b) (West 1998).  Moreover, Supreme Court Rule 366(b)(2)(iii) states that, in jury cases, "[a] party may not urge as error on review of the ruling on the party's posttrial motion any point, ground, or relief not specified in the motion." 155 Ill. 2d R.366.  We hold that because Sears specifically requested a new trial, this request included a request on all counts of the complaint.

Sears also argues that it did not address count I in its posttrial motion because the jury may have been confused as to the allocation of comparative fault between the parties in the verdict form.  Sears argues that the jury should have been given a verdict form with instructions to allocate fault between only two parties (Kresin and Jijon), instead of three (Kresin, Sears and Jijon), because without the independent basis for liability in count II, the jury would not have been asked to apportion any fault to Sears and there would not have been a separate line on the verdict form for Sears.  Sears also argues that the allocation-of-fault issue necessarily impacts count I because the jury's assessment of responsibility for the accident applied to both counts and there is no way to know how the jury would have allocated fault between only Kresin and Jijon.       

In response, Kresin maintains that Sears had an opportunity to present a verdict form that would have separated the findings on these two counts but chose not to do so.  Kresin further argues that Sears did not object to the jury's finding on count I during trial or at the posttrial stage and that the verdict form on count I named both Jijon and Sears. 

While defendants argue that the jury might have been confused as to the allocation of fault between the parties, the record shows that the jury did not seek clarification from the trial court and did not otherwise appear confused about the instructions or its role.  Furthermore, as Kresin points out, Sears did not object to the jury verdict form during the instruction conference or when the form was read to the jury.  Therefore, any objections are waived.  
Forrester v. Patrick
, 167 Ill. App. 3d 105, 109, 520 N.E.2d 1188 (1988); 
Marek v. Stepkowski
, 241 Ill. App. 3d 862, 870, 608 N.E.2d 285 (1992).  

We also reject Sears' argument that, because the jury assessed liability on count II as well as count I, the amount of Kresin's contributory negligence (5%) was affected.  There is no basis to believe that the jury would have found Kresin more negligent if only count I had been before it. 

Kresin next argues that because Sears filed a notice of appeal which specified that defendants sought to vacate count II only, but which did not seek to set aside the verdict on count I, Sears is barred from now seeking to set aside the judgment and verdict as entered on count I.  She argues that defendants' failure to specify that they were also appealing from count I failed to vest this court with jurisdiction to review it.  Defendants maintain that because the notice of appeal specifically included a request for a new trial, this also meant a new trial as to count I since a new trial could not be granted unless the final judgment is also set aside. 

Defendants' notice of appeal stated as follows:

"Defendants request that the Appellate Court

(1) reverse the judgment of the court below denying Sears's [
sic
] request for entry of judgment as a matter of law in favor of Sears on count II of plaintiff's complaint, (2) vacate the jury's allocation of fault, (3) order a new trial, and (4) order such other relief as it deems just and proper.  In the alternative, defendants request that the Appellate Court reduce the damages awarded to the plaintiff." 

A notice of appeal is to be liberally construed.  
Jackson v. Retirement Board of Policemen's Annuity and Benefit Fund
, 293 Ill. App. 3d 694, 698, 688 N.E.2d 782 (1997).  The notice of appeal serves to inform the prevailing party in the trial court that the unsuccessful litigant seeks a review by a higher court.  Briefs, and not the notice of appeal itself, specify the precise points to be relied upon for reversal.  
Burtell v. First Charter Service Corp.
, 76 Ill. 2d 427, 433, 394 N.E.2d 380 (1979).  The touchstone is whether the trial court was adequately apprised of the grounds relied on.  
Brown v. Decatur Memorial Hospital
, 83 Ill. 2d 344, 415 N.E.2d 337 (1980).  Unless an appellee is prejudiced, an appellant's failure to strictly comply with the form of the notice of appeal is not fatal if the deficiency is one of form rather than substance.  
Burtell v. First Charter Service Corp.
, 76 Ill. 2d at 434.  

In the case at bar, Kresin has not claimed that she has been prejudiced by the errors in the notice of appeal.  Indeed, Kresin was able to fully brief and argue the issues raised by defendants' brief.  Furthermore, she was clearly informed that defendants were seeking a new trial and, inferentially, a vacation of the prior judgment, since a new trial could not be granted unless the judgment as to count I was also considered.  See 
Illinois Bell Telephone Co., v. Purex Corp.
, 90 Ill. App. 3d 690, 693, 413 N.E.2d 106 (1980). Thus, we hold that the notice of appeal was adequate to advise Kresin of the judgments challenged and the relief sought, thereby apprising her of the nature of the appeal.   

We now turn to the merits of the appeal.  Sears contends that the verdict on count II is legally unsupportable because Kresin failed to present affirmative evidence establishing with reasonable certainty that Sears did not adequately train its employees in backing up vehicles and that Sears negligently caused plaintiff's injuries.  Sears asserts that there was no evidence at trial to support the conclusion that it was negligent in instructing its employees or that its failure to provide more detailed instructions proximately caused the accident.

In response, Kresin asserts that Sears was aware of the potential danger, and prepared safety literature to be given to its employees, but failed to bring to its employees' attention the warnings and procedures which would have emphasized the need for caution.  Kresin further argues that Sears voluntarily undertook to prepare safety manuals and to conduct safety meetings to bring this particular danger to the attention of its employees.  Sears responds that when an employee is already aware of a potential hazard, it would be futile for the employer to give additional warnings and therefore no warning was required.  See 
Kokoyachuk v. Aeroquip Corp.
, 172 Ill. App. 3d 432, 439, 526 N.E.2d 607 (1988).

When a trial court is presented with a motion for a new trial on the basis of insufficiency of the evidence, it must grant such a motion only if the verdict is contrary to the manifest weight of the evidence.  
Gaffney v. City of Chicago
, 302 Ill. App. 3d 41, 59, 706 N.E.2d 914 (1998).  We hold that this argument involves issues that were questions of fact for the jury to determine.  As the jury decided this issue based on the evidence before it, we see no compelling reason to disturb the jury's verdict.  The inquiry on appeal is not whether other conclusions are possible.  Rather, the inquiry is whether the result reached is reasonable.  See 
Nunley v. Village of Cahokia
, 115 Ill. App. 3d 208, 214, 450 N.E.2d 363 (1983).  Here, the result was reasonable.  Sosniak testified that safety meetings were held in which the backing out of service bays was discussed.  Furthermore, Sears prepared a safety manual that specifically addressed backing out of service bays.  Although no accident had occurred prior to the one in this appeal, the location of the service bay next to the doors used by pedestrians to enter and exit the Auto Center, coupled with the inherent danger in operating a motor vehicle near pedestrians, required Sears to provide more instruction to its employees.  Therefore, we hold that Kresin presented sufficient evidence to establish that Sears failed to adequately train and instruct its employees on safety procedures  to use in operating vehicles near customers and pedestrians in the Auto Center.  

Sears also contends that the award of noneconomic damages was excessive.  The award of damages is not subject to scientific computation and thus is generally a question of fact for the discretion of the jury.  
Dahan v. UHS of Bethesda, Inc.
, 295 Ill. App. 3d 770, 692 N.E.2d 1303 (1998).  We must examine whether the total amount of the verdict falls within the necessarily flexible limits of fair and reasonable compensation, or is so large as to shock the judicial conscience. 
Dahan
, 295 Ill. App. 3d at 781.  Whether an award of damages falls within the reasonable range must be determined from a consideration of the permanency and extent of the injury, possible future deterioration, medical expenses, and restrictions on daily activity because of the injury.  
Tierney v. Community Memorial General Hospital
, 268 Ill. App. 3d 1050, 1064, 645 N.E.2d 284 (1994); 
Mondelli v. Checker Taxi Co.
, 197 Ill. App. 3d 258, 280, 554 N.E.2d 266 (1990).

Sears specifically argues that the disfigurement award of $2 million was grossly excessive, particularly considering Kresin's injuries and her age.  In support of its contentions, it attempts to compare Kresin's case to a hypothetical situation in which a child or young adult with a longer life expectancy is severely disabled.   It is well settled that we have "traditionally declined to make such comparisons in determining whether a particular award is excessive."  
Richardson v. Chapman
, 175 Ill. 2d 98, 114, 676 N.E.2d 621 (1997).  Thus, we will not engage in such a comparison.

Defendants also urge us to find the $2 million disfigurement award excessive because the jury's consideration of Kresin's inability to use her hands goes only to her disability, and has nothing to do with disfigurement. 

"Physical '[d]isability' is defined as '[a]bsence of competent physical, intellectual, or moral powers; *** incapacity caused by physical defect or infirmity.' [Citation.] The term 'disfigure' means 'to make less complete, perfect or beautiful in appearance or character.' [Citation.]"  
Antol v. Chavez-Pereda
, 284 Ill. App. 3d 561, 570, 672 N.E.2d 320 (1996), quoting 
Holston v. Sisters of the Third Order of St. Francis
, 165 Ill. 2d 150, 175, 650 N.E.2d 985 (1995).  

The evidence at trial established that Kresin is unable to straighten her left elbow and that her hand is so contorted that it is permanently fixed in a claw-like position.  Kresin also suffers from paralysis in her left leg.  These injuries certainly affect Kresin's appearance and constitute sufficient disfigurement to justify the jury's award.   

We also hold that the record supports the damage award in its entirety.  Kresin presented uncontradicted evidence of the extent and severity of her injuries, the type of necessary medical treatment and the home care that she requires for the rest of her life, and the profound and permanent impact of those injuries on Kresin and her family.  Consequently, we cannot say that the amount of the jury's verdict for the injuries that Kresin sustained is shocking to a judicial conscience with present-day awareness of the quality of life that a healthy 73-year-old woman can have.  We hold that the jury award does not exceed a fair and reasonable amount and will not be disturbed on review.

Based on the aforementioned reasons, 
the judgment of the circuit court of Cook County is affirmed. 

Affirmed.

HARTMAN and GREIMAN, JJ., concur.